IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Freites C., *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>CITGO Holding, Inc.,<br><br>    Defendant. | C.A. No. 23-989-JLH |

## <u>MEMORANDUM ORDER</u>

Pending before the Court is Defendant CITGO Holding, Inc.'s Motion to Dismiss for Failure to State a Claim. (D.I. 141.) Having considered the Operative Complaint (D.I. 31, Ex. 1 ("Operative Complaint"); D.I. 45, Ex. 1 (Redacted Operative Complaint)), the parties' submissions (D.I. 142, 143, 144, 145), and the applicable law, the motion will be granted and the Operative Complaint will be dismissed.

1. The Court writes primarily for the parties and assumes familiarity with the Operative Complaint (D.I. 31, Ex. 1) and the Court's prior orders (D.I. 37, 53, 64, 85, 128). The Operative Complaint is a sprawling 155-page, 319-paragraph document. It alleges that Plaintiffs, Venezuelan nationals, were unlawfully terminated and discriminated against by the Venezuelan government and its wholly-owned petroleum company, Petroleos de Venezuela, S.A. ("PDVSA"), among others.

2. A defendant may move to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the complaint contains "factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A possibility of relief is not enough. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In determining the sufficiency of the complaint, the court must assume all "well-pleaded facts" are true but need not assume the truth of legal conclusions. *Id.* at 679. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal quotation marks omitted). Because Plaintiffs proceed *pro se*, the pleading is liberally construed and the Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

3.    Before assessing the individual claims set forth in the Operative Complaint, the Court makes a few general observations. This case was initially brought against a number of defendants, including, among others, the Venezuelan government and PDVSA. After a series of voluntary dismissals by Plaintiffs, the sole remaining Defendant is CITGO Holding, Inc. ("CITGO"). (D.I. 85, 130, 135.) However, the factual allegations in the Operative Complaint focus almost entirely on the now-dismissed defendants, not CITGO. For example, although many of Plaintiffs' claims are based on alleged prior employment relationships, the Operative Complaint expressly alleges that Plaintiffs were never employed by Defendant CITGO. (Operative Complaint ¶¶ 27, 173.)

4.    Muddling matters further, while the Operative Complaint initially asserts that Defendant CITGO is an alter ego of Venezuela, the Operative Complaint nevertheless expressly

disclaims reliance on an alter ego theory under which CITGO would be liable for the acts of other entities.  (*Id.* ¶¶ 71, 76, 79 (asserting that liability exists "without need to recurr [sic] to Alter ego allegations" and that "Defendants engaged in the illegal activities alleged by Plaintiffs, not as alter ego of the Republic of Venezuela (which they may or may not have been at any given point in time) but as the legal entities they are and for which their actions and omissions they are to answer").)

    *5.*    Further muddying the waters, Plaintiffs' brief in opposition to the motion to dismiss repeatedly refers to theories of liability that are nowhere suggested by allegations in the Operative Complaint.[1]  "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (cleaned up).  Thus, the Court considers the arguments set forth in Plaintiffs' opposition brief "only to the extent they find support in the allegations set forth in the complaint."  *Id.*

    6.    Moreover, many of the Operative Complaint's allegations involving CITGO are mere legal conclusions and bald assertions that the Court cannot credit.  (*See, e.g.*, Operative Complaint ¶¶ 73–76, 78, 173 ("A number of workers dismissed by PDVSA were discriminated against by CITGO"), 177, 225 ("Defendant CITGO financed a large number of illegal activities for PDVSA in the United States.").)

    7.    Generously construing the Operative Complaint's allegations in Plaintiffs' favor, the Operative Complaint alleges only the following facts regarding Defendant CITGO:

- Plaintiffs were prohibited from seeking employment at CITGO.  (*Id.* ¶¶ 27, 173.)

- CITGO is a wholly-owned subsidiary of PDVSA.  (*Id.* ¶¶ 74, 98, 103.)

---

[1] CITGO hypothesizes that "Plaintiffs may have used artificial intelligence to draft their brief."  (D.I. 145 at 2 n.1.)

- CITGO "procure[s] good and services on behalf of PDVSA." (*Id.* ¶ 74.)

- CITGO is indirectly owned by the Venezuelan government. (*Id.* ¶¶ 74, 98, 103.)

- In 2017, CITGO "ordered several of its [non-party] executives to travel to Venezuela in order to have them imprisoned." (*Id.* ¶ 166.)

- Several individuals have been officers and directors of both PDVSA and CITGO. (*Id.* ¶¶ 174–176.)

- PDVSA publicly stated that CITGO was valued at $12 billion but represented in court that CITGO was instead valued at between $32 and $40 billion. (*Id.* ¶¶ 244–46.)

- "PDVSA and CITGO officers have accused Plaintiffs and others in a similar situation of being terrorists." (*Id.* ¶ 273.)

8.    In a count styled, "FIRST CAUSE OF ACTION – Contractual," the Operative Complaint alleges breach of alleged employment contracts between Plaintiffs and PDVSA. (*Id.* ¶¶ 228–237.) But the Operative Complaint does not allege the existence of employment contracts between Plaintiffs and Defendant CITGO nor any facts plausibly suggesting the existence of employment contracts between Plaintiffs and CITGO. Indeed, the Operative Complaint alleges that Plaintiffs were not CITGO employees. (*Id.* ¶¶ 27, 173.)    What's more, the Operative Complaint expressly disclaims reliance on an alter ego or agency theory, and it does not allege facts to plausibly suggest that CITGO could be held liable for breach of contract under either theory.

9.    In response to CITGO's argument that the Operative Complaint fails to state a contract claim against CITGO, Plaintiffs contend that CITGO is liable for breaching the implied covenant of good faith and fair dealing. (D.I. 143 at 3.) But the Operative Complaint (i) does not

allege that CITGO violated the implied covenant of good faith and fair dealing; (ii) does not allege the existence of a contract between CITGO and Plaintiffs to which the covenant could be implied; and (iii) does not allege any facts plausibly suggesting that CITGO violated any such covenant. The "FIRST CAUSE OF ACTION – Contractual" will be dismissed for failure to state a claim.[2]

10.    In a count styled, "SECOND CAUSE OF ACTION-Tort-related causes of action," the Operative Complaint appears to allege claims for "Fraudulent misrepresentation" (Operative Complaint ¶¶ 239–48), "Conversion" (*id.* ¶¶ 249–61), "Negligence and Bad Faith" (*id.* ¶¶ 262–66), "Assault" (*id.* ¶ 268), "Battery" (*id.* ¶ 269), "False Imprisonment" (*id.* ¶ 270), "Intentional Infliction of Emotional Distress" (*id.* ¶ 271), "Trespass" (*id.* ¶ 272), and "Defamation" (*id.* ¶ 273).

11.    This count will also be dismissed.  For starters, most of the claims allegedly asserted under the "SECOND CAUSE OF ACTION" are expressly alleged against only PDVSA, not Defendant CITGO.  (*Id.* ¶¶ 239–40 ("Fraudulent Misrepresentation" against "The Defendant PDVSA"), 267 (alleging the following "Intentional Torts" were the result of "deliberate actions taken by PDVSA"), 268 ("Assault where Defendant PDVSA . . . ."), 269 ("Battery: where Defendant PDVSA . . . ."), 270 ("False Imprisonment: The defendant . . . ."), 271 ("Intentional Infliction of Emotional Distress: The defendant . . . ."), 272 ("Trespass: The defendant . . . .").  As for the claim for "Conversion" alleged against "The Defendants" (*id.* ¶¶ 249–50), the Operative Complaint never alleges that Defendant CITGO converted any of Plaintiffs' property and doesn't allege facts plausibly suggesting that CITGO converted property.  The same goes for the allegation

_____

[2] Plaintiffs' brief also contends that "the First Cause of Action encompasses violations of Venezuelan labor law and international labor rights norms[,]" and that "Plaintiffs allege a claim for wrongful retaliatory discharge based on Defendants' mass termination of Plaintiffs[.]"  (D.I. 143 at 5.)  The "FIRST CAUSE OF ACTION – Contractual" does not mention either of those theories, but even if it did, it does not allege facts plausibly suggesting that CITGO could be liable for such claims.

of "Negligence and Bad Faith" against "The Defendants" (*id.* ¶¶ 262–63), as the Operative Complaint doesn't allege any facts plausibly suggesting that Defendant CITGO owed Plaintiffs a duty, that CITGO breached that duty, or that CITGO's breach of any duty caused Plaintiffs injury. As for the allegation of "Defamation," the Operative Complaint alleges that "PDVSA and CITGO officers have accused Plaintiffs and others in a similar situation of being terrorists." (Operative Complaint ¶ 273.) That threadbare assertion is insufficient to state a plausible claim for defamation and Plaintiffs do not identify any factual allegations in the Operative Complaint plausibly suggesting that CITGO is liable for defamation.

12.    In response to CITGO's argument that the Operative Complaint fails to state a tort claim against CITGO, Plaintiffs' brief refers to unpleaded legal theories. For example, Plaintiffs suggest that CITGO is liable for fraudulent misrepresentations made by PDVSA because "CITGO and PDVSA worked in concert, and thus the fraudulent statements by PDVSA agents are imputable to CITGO (either via conspiracy or alter ego principles)." (D.I. 143 at 6.) But the Operative Complaint does not suggest that the statements of PDVSA's agents are attributable to CITGO, nor does it allege facts plausibly suggesting that CITGO is liable under a conspiracy or alter ego theory. Similarly, regarding their claim for "Conversion," Plaintiffs concede that the allegedly converted property was taken by "PDVSA and Venezuela government agents," but Plaintiffs contend that "CITGO is liable for conversion because it exercised indirect control or derived benefit from wrongfully withheld property" and is "jointly liable under a civil conspiracy theory." (D.I. 143 at 7.) But again, the Operative Complaint doesn't allege facts plausibly suggesting that CITGO could be liable under these theories. The same is true for the remaining "claims" set forth in the "SECOND CAUSE OF ACTION-Tort-related causes of action." The

"SECOND CAUSE OF ACTION-Tort-related causes of action" will be dismissed for failure to state a claim.

13.     Next up is the "THIRD CAUSE OF ACTION – Precedent causes of action." (Operative Complaint ¶ 275.)   This "THIRD CAUSE OF ACTION" is supported by a sole paragraph, reproduced below:

> Plaintiffs respectively bring to the court the similarities of this case with the case of the Victims of the September 11th Terrorist attack v. Taliban in the attachment of the Central Bank of Afghanistan.  As this is an evolving issue, where the Department of State recognizes 'Nicholas Maduro continues to claim to be the leader of Venezuela and retains control and the loyalty of the Venezuelan Armed Forces (FANB).  Members of the Maduro regime continue to engage in criminal activities and members of several Colombian FTOs— including the Revolutionary Armed Forces of Colombia-People's Army (FARC-EP), Segunda Marquetalia, and the National Liberation Army (ELN)—continue to operate in Venezuelan territory with relative impunity.'(U.S.Department of State – Country Reports on Terrorism 2021: Venezuela) the cause of action stands based on the statements of the U.S. Department of State , the ongoing litigations against states or de facto government in control of a territory and similar covered in the Terrorism Risk Insurance Act of 2002 (TRIA).

(Operative Complaint ¶ 276 (emphasis omitted; typographical errors in original).)   Generously construing this allegation, it does not allege any facts plausibly suggesting any viable legal claims against CITGO, and Plaintiffs have not identified any paragraphs of the Operative Complaint that

could support it.[3]  The "THIRD CAUSE OF ACTION – Precedent causes of action" will be dismissed.[4]

14.     The final count is the "FOURTH CAUSE OF ACTION (Equity-related causes of action)."  (Operative Complaint ¶ 277.)  This count also appears to encompass multiple individual claims, including "unjust enrichment" (*id.* ¶¶ 278–82), "Violation of labor laws" (*id.* ¶ 283), "Violation of international treaties" (*id.* ¶¶ 284–87), and "FRAUDULENT CONCEALMENT" (*id.* ¶¶ 288–93).  Here again, the Operative Complaint never expressly states that these claims are asserted against Defendant CITGO and doesn't allege any facts suggesting that CITGO could be liable.  Although the "unjust enrichment" claim is asserted against "Defendants," the Operative Complaint only alleges that Plaintiffs' property was "seized by PDVSA and the Venezuelan government," not CITGO.  (*Id.* ¶¶ 279–80.)  As for its claim for "Violation of labor laws," the Operative Complaint does not cite any particular labor laws (or causes of action thereunder), only alleges this claim against PDVSA ("Plaintiffs allege that PDVSA violated the labor laws"), and does not allege any facts plausibly suggesting CITGO's liability.  (*Id.* ¶ 283.)  Similarly, the claim

---

[3] TRIA claims require "that there (1) be a judgment, (2) against a terrorist party, and (3) the claim underlying the judgment be based on an act of terrorism."  *Calderon-Cardona v. Bank of N.Y. Mellon*, 770 F.3d 993, 999 (2d Cir. 2014).  The Operative Complaint does not allege any facts plausibly suggesting the existence of any of those elements with respect to CITGO.  Plaintiffs concede that the "TRIA is not itself a cause of action."  (D.I. 143 at 15.)

[4] Bizarrely, Plaintiffs' brief asserts that the Operative Complaint's "Third Cause of Action encompasses claims under several U.S. statutes and international law doctrines: the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968; the Alien Tort Statute (ATS), 28 U.S.C. § 1350; references to the Foreign Corrupt Practices Act (FCPA), 15 U.S.C. §§ 78dd-1, et seq.; the Terrorism Risk Insurance Act (TRIA); and the Anti-Terrorism Act (ATA), 18 U.S.C. § 2333."  (D.I. 143 at 9.)  But the "THIRD CAUSE OF ACTION – Precedent causes of action" says nothing about RICO, the ATS, the FCPA, nor the ATA.  Plaintiffs' brief then spends seven pages arguing that Plaintiffs' claims under these statutes should not be dismissed, notwithstanding that the Operative Complaint never mentions these statutes.  (D.I. 143 at 9–16.)  Plaintiffs' brief also spends two pages discussing sovereign immunity, an irrelevant issue not raised by CITGO.  (*Id.* at 17–19.)

for "Violation of international treaties" does not identify a cause of action, is only alleged against PDVSA, and does not allege any facts plausibly suggesting CITGO's liability. (*Id.* ¶¶ 284–85.) And the final claim for "FRAUDULENT CONCEALMENT" does not appear to be alleged against CITGO ("PDVSA and Junta Administradora Ad hoc de PDVSA have fraudulently concealed . . . ."), and does not allege any facts plausibly suggesting CITGO's liability for fraudulent concealment. (*Id.* ¶¶ 284–85.)

15.    In response to CITGO's argument that this count fails to state a claim against it, Plaintiffs argue that "Plaintiffs satisfy Delaware's unjust enrichment test, alleging Defendants, including CITGO, were unjustly enriched by its complicity with PDVSA withholding wages, benefits, and unlawfully seizing property, thereby directly impoverishing Plaintiffs." (D.I. 143 at 16.) But, here again, this theory is not pled in the Operative Complaint, and even if it were, the Operative Complaint does not plead any facts plausibly suggesting that CITGO is liable for unjust enrichment. Unjust enrichment is the only claim mentioned in the "Fourth Cause of Action" section of Plaintiffs' brief—Plaintiffs don't contend that the Operative Complaint states a claim for "Violation of labor laws," "Violation of international treaties," or "FRAUDULENT CONCEALMENT." (*Id.* at 16–17.) The Operative Complaint's "FOURTH CAUSE OF ACTION (Equity-related causes of action)" will be dismissed. [5]

---

[5] CITGO also contends that the Operative Complaint should be dismissed because it is a shotgun-style pleading that engages in impermissible group pleading and violates the requirements in Federal Rule of Civil Procedure 8 that a complaint must be supported by a "short and plain statement of the claim" and that "[e]ach allegation must be simple, concise, and direct." (D.I. 142 at 4–6 (quoting Fed. R. Civ. P. 8(a)(2), (d)(1)).)   Although I agree that the Operative Complaint is "anything but 'simple, concise, and direct,'" *Washington v. Warden SCI-Greene*, 608 F. App'x 49, 52 (3d Cir. 2015) (affirming dismissal of *pro se* complaint with prejudice for failure to comply with Rule 8), I do not need to further address the Rule 8 argument because I agree that the Operative Complaint is subject to dismissal under Rule 12(b)(6).

16.     Plaintiffs' brief in opposition to the motion to dismiss requests leave to amend the complaint.  (D.I. 143 at 20.)  The Court will not grant unrestricted leave to amend at this time, as (i) Plaintiffs have already had ample opportunities to plead their claims against CITGO, (ii) Plaintiffs have not provided a copy of their proposed amended complaint as required by the local rules, nor do Plaintiffs explain how any amendment could possibly cure the deficiencies identified by CITGO, and (iii) further amendment appears to be futile, especially since the Operative Complaint already includes over 300 paragraphs, most of which are irrelevant to any claims that could possibly be asserted against CITGO.   That said, the Court is cognizant of the Third Circuit's instruction that a district court should generally grant a request for leave to amend unless amendment would be futile.  Any renewed request for leave to amend must be filed on or before January 16, 2026, and must be accompanied by a fully unredacted copy of the proposed amended pleading.

Accordingly, IT IS HEREBY ORDERED that:

1.     CITGO Holding, Inc.'s Motion to Dismiss for Failure to State a Claim (D.I. 141) is GRANTED. The Operative Complaint (D.I. 31, Ex. 1; D.I. 45, Ex. 1) is DISMISSED for failure to state a claim.

2.     Any renewed request for leave to amend the complaint must be filed on or before January 16, 2026, and must be accompanied by a fully unredacted copy of the proposed amended pleading.

3.     Plaintiffs' pending motions (D.I. 133, 136) are DISMISSED as moot.

Dated: December 17, 2025

_____
The Honorable Jennifer L. Hall
UNITED STATES DISTRICT JUDGE