**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| FREITES C., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CITGO HOLDING, INC.,<br><br>Defendant. | C.A. No. 23-989-JLH |

**MEMORANDUM ORDER**

Pending before the Court is Plaintiffs' Renewed Motion for Leave to File Third Amended Complaint. (D.I. 147.) Having reviewed the proposed Third Amended Complaint (D.I. 147, Ex. 1 (the "TAC")), the parties' submissions (D.I. 147, 148, 149, 150, 154, 155, 156), and the applicable law, the Court concludes that Plaintiffs' motion should be denied.

1. The Court writes primarily for the parties and assumes familiarity with this case's procedural history and the Court's prior orders. As relevant here, the Court previously dismissed Plaintiffs' Second Amended Complaint for failure to state a claim. (D.I. 146.) Plaintiffs' instant motion seeks leave to file the TAC, which asserts claims against the sole remaining Defendant, CITGO Holding, Inc. ("CITGO").[1] The TAC appears to be Plaintiffs' sixth proposed complaint filed on the docket. (D.I. 5; 10; 18, Ex. 1; 31, Ex. 1; D.I. 45, Ex. 1; TAC.)[2] The Court dismissed the Second Amended Complaint because it focused primarily on prior defendants Plaintiffs had voluntarily dismissed, contained contradictory allegations, and alleged only threadbare legal

[1] Plaintiffs originally brought claims against several more defendants (D.I. 5), but those other defendants were either voluntarily dismissed (D.I. 130, 135) or dropped from subsequent complaints (D.I. 31, Ex. 1; D.I. 85; TAC). It does not appear that any of the previously-named defendants were properly served.

[2] The document at D.I. 45, Ex. 1, purports to be a redacted version of the document at the D.I. 31, Ex. 1, but it contains different attachments, formatting, and pagination.

conclusions that did not plausibly suggest Defendant's liability. (D.I. 146 at 2–9.) The Court noted that "further amendment appears to be futile," but given "the Third Circuit's instruction that a district court should generally grant a request for leave to amend unless amendment would be futile," the Court allowed Plaintiffs to file a motion for leave to amend. *Id.* at 10.

2. The Second Amended Complaint was a sprawling 155-page, 319-paragraph document (D.I. 31, Ex. 1), whereas the TAC is only 12 pages and 32 paragraphs. However, the allegations and claims asserted in the TAC are completely different from those asserted in the SAC. Plaintiffs did not attempt to remedy the deficiencies identified by the Court but instead completely changed the alleged factual bases for their claims. Plaintiffs' request for leave to amend might be denied for that reason alone.

3. Nonetheless, in the interest of completeness, the Court proceeds to evaluate whether the TAC states a claim. *See Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 243 (3d Cir. 2010) (explaining that a motion for leave to amend should be denied as futile where the proposed amended pleading fails to state a claim under Fed. R. Civ. P. 12(b)(6)).

4. The "Gravamen" of the TAC relates to what the TAC coins as the "Delaware Leak."[3] (TAC ¶ 2.) The TAC alleges that non-party Orlando Viera-Blanco, acting as CITGO's agent, "publicly disclos[ed] the court-sealed identities of Plaintiffs . . . expos[ing] them to the lethal reach of the Venezuelan regime and its proxy criminal organization, Tren de Aragua, creating an imminent danger of kidnapping and physical violence."[4] (*Id.*) The TAC also alleges that CITGO, through its alleged agents and affiliates, funded and facilitated additional allegedly illegal acts,

[3] The TAC is replete with bold emphases. The Court's quotations to the TAC have omitted all emphases.

[4] The Court previously ruled that "Plaintiffs have not established that Defendants violated the Court's sealing order." (D.I. 128 at 3.)

although the connection between these alleged acts and the asserted claims is unclear. (*Id.* ¶¶ 3–4, 13–20, E.)[5]

5. The Court begins with the "gravamen" of the TAC. Assuming that Viera-Blanco was responsible for disclosing Plaintiffs' identities—a proposition not supported by the TAC's factual allegations—the TAC fails to allege facts plausibly suggesting that Viero-Blanco acted as an agent of CITGO. The TAC alleges that Viera-Blanco "is a recipient of financial benefits from CITGO's ecosystem" because he "serves on the board of the Venezuelan American Engagement Foundation, an entity that operates within the grant network of the Simon Bolivar Foundation." (*Id.* ¶ 22.) The TAC further alleges that the Simon Bolivar Foundation "is solely funded and controlled by CITGO (receiving ~$6/million/year)" and that it "serves as a conduit to fund the NGOs and operatives (like Viera-Blanco) who execute the 'Lawfare' and defamation campaigns against CITGO's creditors." (*Id.* ¶ 23.) But merely alleging that Viera-Blanco serves on the board of a foundation that operates within the grant network of another foundation that is funded by CITGO does not rise to a plausible inference that Viera-Blanco acted on CITGO's behalf.[6] Nor does the TAC allege any other facts plausibly suggesting that CITGO is responsible for Viera-Blanco's actions.[7]

---

[5] The allegations under heading "E" are not numbered.

[6] *See, e.g.*, *Otto Candies, LLC v. KPMG, LLP*, No. 2018-435, 2020 WL 4917596, at *14 (Del. Ch. Aug. 21, 2020) (dismissing claims based on agency theory as inadequately pled and explaining that "Delaware law requires a plaintiff to plead the principal had control over the wrongdoing at issue"); *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d 187, 198–99 (3d Cir. 2001) (affirming dismissal of complaint based on agency relationship under Delaware law and explaining that "[t]o bind a principal by its agent's acts, the plaintiff must demonstrate that the agent was acting on behalf of the principal and that the cause of action arises out of that relationship").

[7] *See, e.g.*, *Arcelik, A.S. v. E.I. DuPont de Nemours and Co.*, 619 F. Supp. 3d 473, 481–83 (D. Del. 2022), *aff'd*, No. 22-2634, 2023 WL 3862506 (3d Cir. June 7, 2023) (granting summary

6. Moving to the specific claims alleged in the TAC, Count I asserts a claim for "Civil Rico (18 U.S.C. § 1962(c))." (TAC at 9.) To plead a violation of § 1962(c), a plaintiff must plausibly allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Kolar v. Preferred Real Est. Investments, Inc.*, 361 F. App'x 354, 362 (3d Cir. 2010). The TAC alleges that "CITGO Holding, PDVSA, and their agents" constitute an "association-in-fact" enterprise through a pattern of racketeering activity including predicate acts of wire fraud, money laundering, obstruction of justice, and witness tampering. (TAC ¶¶ 25–26.)

7. For several reasons, the TAC does not plausibly allege a violation of § 1962(c). For starters, the TAC does not allege facts plausibly suggesting the existence of an enterprise. A plaintiff alleging "a RICO claim must plead facts plausibly implying the existence of an enterprise with . . . a shared purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 369–70 (3d Cir. 2010) (cleaned up). The TAC does not allege facts plausibly suggesting that the members of the alleged enterprise "function as a unit" with a shared purpose. *See id.* at 374.

8. The TAC also does not plausibly allege a pattern of racketeering activity through the enumerated predicate acts. The wire fraud allegation is not pled with particularity as required by Fed. R. Civ. P. 9(b) as the TAC does not provide the details of the allegedly fraudulent acts or

judgment on claims based on alleged agency relationship and explaining that the "three essential attributes of an agency relationship" are "(1) that an agent holds a power to alter the legal relations between the principal and a third party; (2) that an agent is a fiduciary with respect to matters within the scope of the agency; and (3) that a principal has the right to control the conduct of the agent with respect to matters entrusted to the agent" (cleaned up)).

explain how they amount to fraud.[8] The money laundering allegations are conclusory and do not plausibly suggest facts meeting the elements of money laundering.[9] And the obstruction of justice and witness tampering allegations are based on the alleged "Delaware Leak," which, as already explained, is not plausibly pled or attributable to CITGO.[10] The TAC doesn't otherwise allege facts plausibly suggesting that any member of the alleged enterprise attempted to tamper with a witness or obstruct justice. And even if any of these predicate acts were plausibly alleged, the TAC does not allege facts plausibly suggesting that "the defendant's actions amount to or pose a threat of continued criminal activity[.]" *Kolar*, 361 F. App'x at 363 (citation omitted).

9. Count II asserts a claim for "Tortious Interference With Prospective Economic Advantage," and alleges that Plaintiffs had a valid business expectancy "via this federal litigation, the seized assets recovery, the compensation for lost and cancelled contracts, and other damages, via this federal litigation" as a result of Defendants' alleged leak of Plaintiffs' identities. (TAC ¶¶ 27–28.) To state a tortious interference with prospective economic advantage claim under Delaware law, the TAC must allege facts plausibly suggesting "(a) the reasonable probability of a

---

[8] *See Hlista v. Safeguard Properties, LLC*, 649 F. App'x 217, 221 (3d Cir. 2016) (affirming that RICO predicate acts rooted in fraud must be pled with particularity).

[9] The TAC alleges that a lobbying contract was "paid for with commingled proceeds of the stolen *Fideicomiso* (Pension Trust)," that certain Plaintiffs "possessed vested property rights in their Severance and Pension Trust (*Fideicomiso*)," and that some of these funds were transferred to a third party and "laundered through the U.S. financial system." (TAC ¶¶ 3, 15–16.) The TAC does not allege facts explaining how these funds were allegedly stolen, what transactions took place, how CITGO or other members of the alleged enterprise acted with the intent to promote the carrying on of specified unlawful activity, or how the transactions were designed to conceal unlawful activity or to avoid a transaction reporting requirement. *See* 18 U.S.C. § 1956.

[10] The TAC relies on the so-called "Delaware Leak" to extend the alleged pattern of racketeering activity into 2024. Without the alleged "Delaware Leak," it appears that the RICO claim is time-barred. *See LabMD Inc. v. Boback*, 47 F.4th 164, 179 (3d Cir. 2022) ("The limitations period for a federal RICO claim is four years.").

business opportunity, (b) the intentional interference by the defendant with that opportunity, (c) proximate causation, and (d) damages." *Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 122 (Del. Ch. 2017).

10. The TAC does not allege facts plausibly suggesting CITGO's liability for tortious interference with prospective economic advantage. For starters, as explained above, the TAC does not allege facts plausibly suggesting that Viera-Blanco's alleged leak of Plaintiffs' identities is attributable to CITGO. What's more, Plaintiffs do not provide alleged facts or argument explaining how this litigation could satisfy the requirement of a reasonably probable business opportunity.[11] This lawsuit aside, the TAC does not allege any facts supporting the bare assertion regarding "lost and cancelled contracts" and does not set forth any facts plausibly suggesting CITGO's liability for any such cancelled contracts.[12] (TAC ¶ 27.) And to the extent this claim invokes the TAC's allegations regarding certain Plaintiffs' pension funds, the TAC alleges that "pension funds were transferred to the Michael Kenwood Group in Connecticut, operated by Francisco Illarramendi[,]" that "CITGO Holding benefitted from this liquidity[,]" and that the "stolen funds were commingled to maintain CITGO's operations and solvency while the Plaintiffs were left destitute." (*Id.* ¶¶ 16–17.) Those allegations do not plausibly suggest that CITGO was responsible for any intentional interference with a reasonably probable business opportunity.

[11] *See Organovo*, 162 A.3d at 122 (explaining that a plaintiff "must identify a specific party who was prepared to enter[] into a business relationship but was dissuaded from doing so by the defendant and cannot rely on generalized allegations of harm"); *Kroll OnTrack, Inc. v. Devon IT, Inc.*, No. 13-302, 2015 WL 13766880, at *6–7 (D. Minn. Mar. 20, 2015) (holding that "an expected outcome of a lawsuit . . . is not the type of interest sought to be protected by" tortious interference with prosecutive economic advantage).

[12] Indeed, Plaintiffs previously alleged that they were employed by PDVSA, not CITGO. (D.I. 31, Ex. 1 ¶¶ 27, 173, 230.)

11. Count III asserts a claim for "Intentional Infliction of Emotional Distress (IIED)." (TAC at 10.) This count is based entirely on the so-called "Delaware Leak." (TAC ¶¶ 30–31.) To state an IIED claim, a plaintiff must allege facts plausibly suggesting that the defendant "intentionally engaged in extreme or outrageous conduct that caused severe emotional distress." *Hunt ex rel. DeSombre v. State, Dept. of Safety and Homeland Sec., Div. of Del. State Police*, 69 A.3d 360, 367 (Del. 2013). As noted, the TAC does not allege facts plausibly suggesting that Viera-Blanco acted as CITGO's agent. The additional allegation in Count III that "CITGO is vicariously liable for the acts of Viera-Blanco, as it funded the infrastructure of the harassment and facilitated the sealed content" is a threadbare legal conclusion the Court cannot credit.[13] (TAC ¶ 31.) Nor does the TAC allege facts suggesting that CITGO committed any other act that could plausibly meet the elements of IIED under Delaware law.

12. Count IV asserts a claim for "Aiding and Abetting Persecution (Alien Tort Statute)." (TAC at 10.) The Supreme Court recently held that the Alien Tort Statute does not create any causes of action (such as for persecution) and therefore does not provide for aiding and abetting liability under any such cause of action. *Cisco Sys., Inc. v. Doe I*, 146 S. Ct. 1882, 1892 (2026). Moreover, Plaintiffs' ATS claims are based on injuries occurring outside of the United States (TAC ¶¶ 13–14, 32), but the ATS does not reach injuries occurring overseas even if the relevant acts were directed from the United States, *Nestlé USA, Inc. v. Doe*, 593 U.S. 628, 632–34 (2021). And the TAC doesn't allege facts plausibly suggesting that CITGO could be liable for any cause of action (or aiding and abetting any cause of action) cognizable under the ATS. *See Cisco*,

[13] *See Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009) (explaining that "bare assertions" of a "conclusory nature" "are not entitled to the assumption of truth").

146 S. Ct. at 1888, 1892 (explaining that the only causes of action cognizable under the ATS are "violation of safe conducts, infringement of the rights of ambassadors, and piracy").

13. Accordingly, the Court concludes that the TAC does not state a claim and therefore amendment would be futile. *See, e.g.*, *Jones v. Sposato*, 783 F. App'x 214, 217–18 (3d Cir. 2019) (affirming denial of motion for leave to amend *pro se* complaint because amendment was futile).

Accordingly, IT IS HEREBY ORDERED that Plaintiffs' Renewed Motion for Leave to File Third Amended Complaint (D.I. 147) is DENIED.[14]

Dated: September 2, 2026

The Honorable Jennifer L. Hall
UNITED STATES DISTRICT JUDGE

[14] After the briefing on Plaintiffs' motion for leave closed, Plaintiffs filed unauthorized letters asking the Court to consider additional material outside the TAC. (D.I. 150, 154.) The Court has reviewed the material and finds it not relevant to the Court's ruling on the pending motion.